UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| DAVID KENNETH PREISEL, )<br>)<br>    Movant )<br>v. )<br>)<br>)<br>UNITED STATES OF AMERICA, )<br>)<br>    Respondent ) | 2:08-cr-00178-DBH<br><br>2:11-cv-00359-DBH |

### RECOMMENDED DECISION ON 28 U.S.C. § 2255 MOTION

David Preisel, convicted of cocaine, heroin, and firearms offenses and serving a 144-month sentence, has moved pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct the sentence he received, asserting three separate grounds for relief.  Grounds one and three assert, in rather undeveloped fashion, a direct claim that Preisel's rights under the Fifth Amendment to the United States Constitution were violated because his statements were improperly used against him and that his rights were also violated under the Fourteenth Amendment because he was denied due process and equal protection of the laws.  However, the crux of Preisel's petition is found in ground two, which asserts that his sixth amendment right to effective assistance of counsel was violated, specifically because his counsel failed to challenge the admissibility of statements he made to the police at the time of his initial encounter with them and because counsel lied to him and coerced him into agreeing to plead guilty.  Preisel also argues that counsel was ineffective in failing to familiarize himself with the law and facts of Preisel's case and failing to conduct his own investigation into the case, although Preisel does not indicate what exculpatory evidence that investigation might have produced.   Having reviewed the expanded

record provided to the Court by the parties, I now recommend that the Court deny Preisel's petition and enter a summary dismissal of the proceedings without further evidentiary hearing.

## **RELEVANT PROCEDURAL HISTORY**

Charged with cocaine, heroin, and firearms offenses, David Preisel pleaded guilty under an agreement that waived his right to appeal "[a] sentence of imprisonment that does not exceed 180 months." (ECF No. 7.) In the absence of a Government cooperation-based motion, Preisel faced a mandatory minimum sentence of 10 years on the cocaine charge and 5 years consecutive on the firearms offense. As a result of the Government cooperation-based departure motion, the Court actually imposed a combined term of 144 months, 96 months on the drug charges and 48 months to be served consecutively on the firearms charges. (ECF No. 29.) Preisel filed a pro se notice of appeal (ECF. No. 32) which led to a summary affirmance by the First Circuit Court of Appeals noting that enforcement of the waiver of appeal provision would not work a miscarriage of justice. (ECF No. 44.)

At the sentencing hearing the Court determined that the guideline range would be 210 to 262 months, and that application of the statutory consecutive minimum of five years brought the range to 270 to 322 months. (S. Tr. 17.) Fully cognizant of its departure authority, the Court concluded that "the statutory mandatory minimums do adequately reflect the sentencing factors at work here in Section 3553(a)" and made the statutory mandatory minimum term of 180 months an appropriate sentence upon which to base its further consideration of the Government's motion regarding cooperation. After reviewing the Government's departure motion and supporting letter, the Court concluded that a 20 percent departure should be applied as recommended, bringing the sentence to 144 months. (S.Tr. 21.)

Once Preisel filed this timely § 2255 petition, the parties expanded the record by submitting certain exhibits from trial counsel's file and other police records. (ECF No. 61.) Preisel's Exhibit 1A is a redacted page 3 of a 5-page report by an unidentified author describing some of the circumstances leading to Preisel's arrest. Preisel's Exhibits 2A-3A are duplicate copies of the same January 7, 2009, letter counsel wrote to Preisel, at Preisel's request, while Preisel was at the Strafford (N.H.) Jail, discussing the need for Preisel to make a decision regarding cooperation and advising Preisel of the admissibility of certain statements made during his proffer session. Exhibits 4 and 5 consist of docket entries and CJA billing information from Preisel's case. Exhibit 6 is an October 5, 2008, letter from trial counsel to Preisel that enclosed the discovery materials counsel had received from the Government. Exhibit 7A is one page of an undated investigative report of an unidentified author describing information from unnamed sources that produced the arrest. Preisel's Exhibits 7B & C appear to be selected portions of the same police report. Exhibit 8 is a September 11, 2008, letter from trial counsel to Preisel at an address in Alfred, Maine summarizing the results of a meeting with the Assistant United States Attorney.

The Government also submitted its own exhibits in support of the expanded record. Government Exhibit 1 is a proffer agreement between Preisel and the United States Attorney with the handwritten date July 14, 2008. The agreement specified that the Government did not agree to make any motions in Preisel's behalf or promise to enter a plea agreement, but would only assess the proffer information for purposes of making prosecutorial decisions. After specifying the circumstances under which Preisel's statements could be used, the agreement provided in paragraph 5 that Preisel "waives the application of Fed. R. Evid. 410 and Fed. R. Crim. P. 11(f) as to any statement that he . . . makes pursuant to this agreement and which

3

the government is otherwise entitled under this agreement to introduce in evidence." The proffer agreement bore the signatures of Preisel, defense counsel, and two representatives of the Government.

Government Exhibit 2 is a September 16, 2008, letter from trial counsel to Preisel. In it, counsel advised Preisel "to reconsider any decision to litigate issues that you have already admitted to" and reminded him that statements he made at the proffer session could be used to impeach him if he testified at trial and also to counter any defense. Trial counsel also reminded Preisel that cooperation meant "full cooperation and acceptance of responsibility." He told Preisel that at offense level 34 and criminal history category III, his Guideline range would be 188 to 235 months followed by a mandatory minimum of five years on the firearms count. Trial counsel expressed his belief that "we may be able to do much better" if the Government filed a cooperation-based departure motion, which would enable the Court to ignore the mandatory minimum term on the firearms charge. Nielsen explained that the plea agreement "that you need to sign" provided no guarantee the Government would seek a downward departure and permitted an appeal only of a sentence in excess of 180 months.

Counsel advised Preisel to "make yourself the star witness for the Federal prosecutor and cooperate fully to assure the Government's request for a downward departure." Preisel's substantial cooperation would "likely cause a sentence close to or below the 180 month cap as per the plea agreement." It was up to Preisel to decide. The Government was prepared to present Preisel before the grand jury "but to do that you need to execute these documents." Government Exhibit 3 contains handwritten notes reading: "D must cooperate w/ Gov to get below 180 months." The notes continue: "no cooperation, no acceptance = Base level 36 or 38 - this could get 30 to life range."

### INEFFECTIVE ASSISTANCE OF COUNSEL STANDARD

Preisel's 28 U.S.C. § 2255 claims are dependent on proving ineffective assistance of counsel under the <u>Strickland v. Washington</u>, 466 U.S. 668 (1984) Sixth Amendment standard and <u>Hill v. Lockhart</u>, 474 U.S. 52 (1985), a case addressing ineffective assistance claims related to plea decisions.  His first and third grounds, alleging barebones constitutional violations, have no traction at all unless viewed through the lens of ineffective assistance of counsel.  "In order to prevail," Preisel must show "both that counsel's representation fell below an objective standard of reasonableness and that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>United States v. De La Cruz</u>, 514 F.3d 121, 140 (1st Cir. 2008) (citing <u>Strickland</u>, 466 U.S. at 688, 694).  "In other words," Preisel "must demonstrate both seriously-deficient performance on the part of his counsel and prejudice resulting there from."  <u>Id.</u>  "Moreover, when, as in this case, a petition for federal habeas relief is presented to the judge who presided at the petitioner's plea and sentencing, the judge is at liberty to employ the knowledge gleaned during previous proceedings and make findings based thereon without convening an additional hearing." <u>United States v. McGill</u>, 11 F.3d 223, 225 (1st Cir. 1993).

### DISCUSSION

The Government's first argument as to all of the factual allegations raised in Preisel's memorandum of law is that Preisel's memorandum was not signed under penalty of perjury, though Preisel signed his form motion under penalty of perjury.  Preisel explains in his reply that he "signed the final page of the form that the court sent him."  Preisel notes that the memorandum was attached to the form motion and "the motion and memorandum were as one, and the defendant asks the court to accept it as so." (Reply at 2, ECF No. 75.)  Given my

ultimate recommendation in this case, I think that Preisel has the better position on this issue. Rule 12 of the Rules Governing Section 2255 Proceedings reads: "The Federal Rules of Civil Procedure and the Federal Rules of Criminal Procedure, to the extent that they are not inconsistent with any statutory provisions or these rules, may be applied to a proceeding under these rules." In this case, if the Court did not accept Preisel's argument that the motion and memorandum "were as one," an argument I am willing to accept, I would recommend that the remedy would be to call the omission to Preisel's attention and give him an opportunity to promptly correct it as, by analogy, is permitted under Rule 11(a) of the Federal Rules of Civil Procedure in the case of unsigned pleadings. Given my conclusion that Preisel's factual allegations, even if asserted under penalty of perjury, do not warrant relief under § 2255, I see no reason to recommend denying this petition on the basis of the technical violation raised repeatedly by the Government in its memorandum. (See Answer at 20, 27-28, 38, ECF No. 72.) I will instead turn to the merits of the various contentions Preisel raises.

**A.     The Admissibility of the Statements**

Preisel asserts this claim regarding the admissibility of his statements as both a standalone, fifth amendment constitutional claim and a claim that trial counsel provided ineffective assistance of counsel in not challenging both the statements made by him during an investigatory stop and the statements he made when in police custody following his arrest. Preisel's claims, made in ground one and ground two, are that the statements he made to investigators should have been suppressed because, at the time Preisel made them, (1) he was in such a "plainly obvious state of intoxication" as a result of having used heroin that he could not act voluntarily and (2) he was not warned of his rights consistent with Miranda v. Arizona, 384

U.S. 436 (1966).  He further argues that his counsel's failure to challenge the admissibility of the statements by a motion to suppress was ineffective assistance.

The investigative reports, portions of affidavits, and letters from the prosecutor that Preisel filed in support of his petition (ECF Nos. 56-1 & 56-7) reveal that the police had a particular residence in Saco, Maine under surveillance.  An informant who had just been inside the residence told the police that Preisel and others were inside using heroin and that the informant had observed two firearms inside the residence in Preisel's possession.  A second informant confirmed this information.  Shortly thereafter, the officers observed Preisel exit the residence with a blue backpack.  They stopped and detained him, apparently at gunpoint, (ECF No. 56-1, Ex. 1B, letter from AUSA to Scott Hastings) and inquired if he had any weapons on his person.  Preisel told them he had no weapons on his person, but that he had two inside the blue backpack.  The officers knew from prior information that Preisel was a convicted felon and user of heroin and crack cocaine.  According to Preisel, he was not advised of his Miranda rights until hours after he was taken to the police station.  He argues that his statements regarding the firearms were inadmissible because they were the product of a custodial interrogation in the absence of Miranda and that, even if he had been provided warnings, his state of intoxication was such as to render his statements involuntary.  (Unsworn Reply, ECF No. 75.)

As far as Preisel's attempt to raise a direct challenge to the admissibility of his statements, Preisel's failure to challenge the admissibility in the trial court or on direct appeal bars a collateral attack based upon his claim of lack of voluntariness unless Preisel can demonstrate cause excusing the default and actual prejudice.  Knight v. United States, 37 F.3d 769, 774 (1st Cir. 1994).  Preisel's only shot at demonstrating cause is through his claim of ineffective assistance of counsel, but the record evidence does not support that claim.

7

Preisel's brief statements at the scene of the investigatory stop regarding the locations of the firearms were not likely to be found inadmissible as the product of a custodial interrogation requiring Miranda warnings. The fact that Preisel was detained and not free to leave the scene is not determinative of whether or not the statements he made were the products of custodial interrogation. United States v. Quinn, 815 F.2d 153 (1st Cir. 1987). On the other hand, the fact that the officers had drawn their guns might cause some to view the situation as a formal arrest. United States v. Trueber, 238 F.3d 79, 93 (1st Cir. 2001) (quoting United States v. Zapata, 18 F.3d 971, 975 (1st Cir. 1994) ("There is no scientifically precise formula that enables courts to distinguish between investigatory stops . . . and 'de facto arrests'.") But given that the police had credible information from two separate informants that Preisel was in possession of more than one firearm, the officers drawing their guns and questioning him immediately about the presence of firearms on his person could well be viewed as a legitimate security measure. United States v. Chaney, 647 F.3d 401, 409-410 (1st Cir. 2011). The warrantless search of the backpack inevitably flowed from both the response Preisel gave to the officers and the circumstances known to the officers based on the informants' reports.

According to the prosecution version of the offense, before Preisel gave a full confession in which he described his drug trafficking activities and named his suppliers, he was warned of his rights and waived them. Preisel now maintains that it was hours later that he received those warnings, but at the Rule 11 hearing Preisel did not contest any fact described in the prosecution version of the offense, including the recounted facts concerning his confession. Instead, Preisel told the Court that all of the representations in the prosecution version of the offense were true. See United States v. Butt, 731 F.2d 75, 80 (1st Cir. 1984) (explaining that the presumption of truthfulness of statements made at Rule 11 hearing is not overcome unless the

allegations in the § 2255 petition are sufficient to state a claim of ineffective assistance of counsel). Preisel admitted to the Rule 11 Court that, before he confessed, he was warned of and waived his rights. Far from rebutting the accuracy of the Government's proof—and Preisel's admission to the Rule 11 Court—the expanded record confirms that Preisel was warned of his rights before he confessed. Preisel's own exhibit at ECF No. 56-7, a page of York County Sergeant Michael Hayes's report, explains that, before Preisel was interrogated, Hayes read Preisel the Miranda warnings. It also verifies that significant time elapsed between the stop on the street and the actual interrogation, but there is no suggestion anywhere that Preisel was interrogated during those couple of hours.

As I read Preisel's motion, the crux of his current complaint is not that his Miranda rights were violated, but that he was so intoxicated from his voluntary pre-arrest consumption of controlled substances that any statements he made were involuntary and should have been subject to a motion to suppress, even if his Miranda rights were provided prior to questioning. It is not surprising that competent counsel reviewed the available evidence and determined that a motion to suppress based on the theory of voluntary intoxication was a nonstarter. The First Circuit has noted that a suspect arrested in a weakened condition because of his heroin withdrawal symptoms is not entitled to any presumption that his post-arrest statements were involuntary. United States v. Palmer, 203 F.3d 55, 61-62 (1st Cir. 2000) ("In the context of the voluntariness of a confession, a defendant's mental state by itself and apart from its relation to official coercion never disposes of the inquiry into constitutional voluntariness.") In the present case, as the Government points out, the police reports and all available evidence suggest that even if Preisel was under the influence, he was sufficiently in control of his faculties to conduct

9

himself in a rational manner. Failing to file a motion to suppress on this record is not ineffective assistance of counsel.

It is apparent from Preisel's own exhibits (ECF No. 56-8) that he and his attorney discussed the issue of Miranda warnings and the evidence available to the Government on that score. His confession was not recorded and there apparently was no warnings form available, although the officers were prepared to testify as described in the prosecution version. Preisel, even at this late date, offers nothing new on this score and does not deny the existence of the warnings. Rather he argues about the timing and about his state of intoxication, neither of which would have led competent counsel to believe that there was a basis to challenge the admissibility of the statements, as discussed above.

**B.     Lies and Coercion by Counsel in the Context of the Guilty Pleas**

Preisel's complaint with his attorney's performance regarding the circumstances of his guilty plea is his assertion that counsel lied, misled him, and coerced him into pleading guilty. The existing and expanded record show the exact reverse: that at all times trial counsel provided Preisel with accurate legal advice about the pros and cons of pleading guilty and left the choice of whether to go to trial entirely up to Preisel. (See Letters of Counsel to Preisel, ECF Nos. 56-2, 56-3, 56-8, 72-2.) Preisel submitted some of these letters in support of his motion and they speak for themselves. His written submissions do not reveal what lies, threats, or coercion counsel is alleged to have employed other than the plain language of the letters. The fact that trial counsel advised Preisel of the downside of going to trial, including the admissibility of his statements and the complete lack of exculpatory evidence, is not a basis upon which to build a case that counsel lied or coerced the defendant. Preisel must present something more than vague generalities and exhibits refuting his contention. United States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993) ("In

determining whether the petitioner has carried the devoir of persuasion in this respect, the court must take many of petitioner's factual averments as true, but the court need not give weight to conclusory allegations, self-interested characterizations, discredited inventions, or opprobrious epithets.").

To the extent Preisel currently complains that counsel lied to him that he faced up to life in prison, the relevant statutes make clear that the advice was correct. Title 21 U.S.C. § 841(b)(1)(A), which was the statute alleged in Count One of the Information, carries a maximum prison term of life. The same is true of 18 U.S.C. § 924(c)(1)(A)(i), which was specifically alleged in Count Three. Moreover, the Rule 11 Court informed Preisel that he faced up to life in prison and the presentence investigator took the same position. Thus, the advice about Preisel's sentence exposure was entirely correct. Additionally, counsel correctly advised Preisel about the likely guideline range for his sentence and also correctly advised him that the only way to escape the mandatory minimums was to obtain a favorable departure motion from the Government. Preisel's current contention that counsel promised him a 40 percent departure is soundly refuted by the expanded record. Counsel did not lie to Preisel, but merely informed him of the "inconvenient truths" associated with this criminal prosecution.

C.     **Counsel's Failure to Investigate and/or Familiarize Himself with the Law and Facts**

Preisel's final volley, allegedly supported by billing records and docket entries, is that trial counsel was not familiar with the facts or law applicable to his case. The letters mentioned in the preceding section establish counsel's familiarity with the relevant statutory provisions and the nature of the proffer process. Counsel was assigned to a case in which his client had already made a highly incriminating confession to law enforcement and the confession was most certainly admissible in evidence. It appears that trial counsel attempted to mitigate the damage

and did a good job of doing so, achieving a final sentence 20 percent below the guideline range. It was not the work of someone unfamiliar with the law and the facts surrounding federal criminal drug prosecutions.

Finally, Preisel maintains that his counsel did not conduct an independent investigation in order to uncover exculpatory evidence. Preisel does not expand upon what this investigation might have revealed or how it would support a viable defense to drug trafficking charges. Relying upon gauzy, self-serving allegations about the existence of potentially exculpatory evidence does not carry the day. David v. United States, 134 F.3d 470, 478 (1st Cir. 1998). If counsel failed to pursue investigatory leads, Preisel has not provided any material of evidentiary quality as to what those leads might have been and what sort of investigation counsel might have conducted.

## CONCLUSION

Based upon the foregoing, Preisel's Motion to Vacate, Set Aside, or Correct his sentence pursuant to 28 U.S.C. § 2255 should be summarily dismissed. I further recommend that a certificate of appealability should not issue in the event Preisel files a notice of appeal because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within ten (10) days of being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.

      Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

May 23, 2012                      /s/Margaret J. Kravchuk
                                       U.S. Magistrate Judge